Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Alyssa Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN HAYNES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYUNDAI AUTOEVER AMERICA, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Steven Haynes, individually and on behalf of all others similarly situated ("Class Members"), upon personal knowledge of facts pertaining to Plaintiff and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendant Hyundai AutoEver America, LLC ("HAEA" or "Defendant").

## NATURE OF THE ACTION

1.    The release, disclosure, and publication of sensitive, private data can be devastating. It is not only an intrusion of privacy and a loss of control, but also a harbinger of identity theft. For victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach. With the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, collect government benefits, or secure driver's licenses in the victims' names. Data breaches force victims to maintain constant vigilance over the misuse of their information.

2.    Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personally identifying information, including but not limited to, names, Social Security numbers (SSN), and driver's licenses (collectively, "PII" or "Personal Information") disclosed to unauthorized third parties during a data breach experienced by HAEA in or around February 22, 2025.

3.    HAEA provides IT and software solutions to the Hyundai Motor Group, which owns the Hyundai, Kia, and Genesis automakers. These IT services include "vehicle telematics, OTA (over-the-air) updates, maps, vehicle connectivity, embedded systems, and autonomous driving systems."[2]

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, S.C. LAWYER (May 2014).

[2] Bill Toulas, *Hyundai AutoEver America Data Breach Exposes SSNs, Drivers Licenses*, BLEEPING COMPUTER (Nov. 5, 2025), https://www.bleepingcomputer.com/news/security/hyundai-autoever-america-data-breach-exposes-ssns-drivers-licenses/.

4.     On March 1, 2025, HAEA discovered a network security incident that impacted some of its systems. After further investigation, and with the help of a cybersecurity firm, Defendant discovered unauthorized access to its network beginning on February 22, 2025. This unauthorized access resulted in the exposure of "names, Social Security numbers, and driver's license numbers" (the "Data Breach").[3]

5.     Little information has been made available by HAEA about the Data Breach. The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again have not been shared with Plaintiff and Class Members, who retain a vested interest in ensuring that their Personal Information remains protected.

6.     Defendant was aware of or should have known of its data security shortcomings. It collects and maintains sensitive Personal Information about its customers, including SSNs and driver's license numbers. It requires customers to provide this highly confidential information in connection with using HAEA's products and services.

7.     Despite knowing how valuable customer information is and the damage that would result from its release, Defendant failed to adequately protect Plaintiff's and Class Members' PII. This PII was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect customers' sensitive data.

8.     Hackers targeted and obtained Plaintiff's and Class Members' PII because it empowers criminals to exploit and steal the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach, including Plaintiff and Class Members, will remain for their respective lifetimes.

9.     Defendant's failures to ensure that its servers and systems were adequately secure fell far short of its obligations and Plaintiff's and Class Members' reasonable expectations for data privacy, jeopardized the security of Plaintiff's and Class Members'

---

[3] Eduard Kovacs, *Automotive IT Firm Hyundai AutoEver Discloses Data Breach*, SECURITY WEEK (Nov. 6, 2025), https://www.securityweek.com/automotive-it-firm-hyundai-autoever-discloses-data-breach.

Personal Information, and exposed Plaintiff and Class Members to fraud and identity theft or the serious risk of fraud and identity theft.

10.    As a result of Defendant's conduct and the resulting Data Breach, Plaintiff and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they have either suffered fraud or identity theft or face the substantial and continuing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

11.    Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Personal Information that it collected and maintained.

## **PARTIES**

12.    Plaintiff Steven Haynes is an adult citizen and resides in Zebulon, North Carolina.

13.    Plaintiff is a Hyundai customer and owns a 2025 Hyundai Kona and a 2026 Hyundai Santa Cruz. He previously owned a 2023 Hyundai Santa Cruz.

14.    HAEA acts as "the digital nervous system for Hyundai, Kia and Genesis operations in North America . . . manag[ing] everything from the software that enables remote car features to the computer systems dealerships use to process [] purchase[s]."[4] On information and belief, Plaintiff's current and former Hyundai models' systems were subject to HAEA's IT management systems.

15.    In or around November 2025, Plaintiff learned of the Data Breach.

16.    In 2025, Plaintiff has received notices that his personal data appears on the dark web, and, additionally, has been receiving spam text messages and phone calls. As a

---

[4] Lars Daniel, *Hyundai Data Breach Potentially Exposes 2.7 Million Social Security Numbers*, FORBES (Nov. 10, 2025), https://www.forbes.com/sites/larsdaniel/2025/11/10/hyundai-data-breach-exposes-27-million-social-security-numbers/.

result of the Data Breach, Plaintiff anticipates spending considerable time and money to try to mitigate and address the harms caused by the Data Breach.

17.     As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come. Plaintiff has a continuing interest in ensuring that their Personal Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

18.     Hyundai AutoEver America, LLC is a California limited liability company, with its principal place of business located at 10550 Talbert Avenue, 3rd Floor, Fountain Valley, California 92708.

## JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT

19.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class Members, the action is a class action in which one or more Class Members are citizens of states different from Defendant, and Defendant is not a government entity.

20.     The Court has personal jurisdiction over Defendant because Defendant is organized in California, has a principal office in Fountain Valley, California, operates in California, conducts other significant business in California, and otherwise has sufficient minimum contacts with and intentionally avails itself of the markets in California.

21.     Venue properly lies in this judicial district because, *inter alia,* Defendant has a principal place of business in this district; Defendant transacts substantial business, has agents, and is otherwise located in this district; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial district.

CLASS ACTION COMPLAINT

**FACTUAL ALLEGATIONS**

**A.    HAEA Collects and Stores Personal Information**

22.    Established in California in 2004, HAEA is "the digital nervous system for Hyundai, Kia, and Genesis operations in North America," which "manages everything from software that enables remote car features to the computer systems dealerships use to process [customer] purchase[s],"[5] providing "end-to-end solutions and support for all stages of the automotive IT lifecycle."[6] HAEA routinely collects highly sensitive Personal Information in the process of providing its products and services.

23.    Defendant is and was aware of the sensitive nature of the Personal Information it collects, and it acknowledges the importance of data privacy. It makes the following promises and claims about data privacy and security on its website:

a.    "Our commitment to protecting & securing our robust IT infrastructure is our number one priority."

b.    "Our team proactively responds to business and environmental changes and external threats."

c.    "We focus on security enhancements to minimize risk and damage and have a fast recovery. Our Security teams take various measures to safeguard against potential threats and protect sensitive data and IT assets from potential threats."[7]

---

[5] Lars Daniel, *Hyundai Data Breach Potentially Exposes 2.7 Million Social Security Numbers*, FORBES (Nov. 10, 2025), https://www.forbes.com/sites/larsdaniel/2025/11/10/hyundai-data-breach-exposes-27-million-social-security-numbers/.

[6] *Servicing a Car's Full Lifecycle*, Hyundai AutoEver America, https://www.haeaus.com/services/ (last visited Nov. 12, 2025).

[7] *IT Infrastructure and Security*, Hyundai AutoEver America, https://www.haeaus.com/services/#it_infrastructure_security (last visited Nov. 12, 2025).

CLASS ACTION COMPLAINT

24.     HAEA's statements concerning privacy and data security make clear that it was aware of the need to safeguard the sensitive Personal Information entrusted to it as a necessary part of its business operations.

**B.    The Data Breach**

25.     On or about February 22, 2025, HAEA detected unauthorized activity on its systems.

26.     According to public reporting, HAEA activated its cybersecurity response protocols, engaged cybersecurity experts to investigate, contain, and remediate the incident, and implemented enhanced security measures. It also notified law enforcement authorities.

27.     HAEA's investigation has revealed evidence that an unauthorized party obtained confidential, proprietary, and personal information, including SSNs, through unauthorized queries on databases storing customer and applicant data. On information and belief, and given the nature of HAEA's business, the compromised data likely includes names, contact information, SSNs, government identification numbers, and other presumably other financial details.

28.     Public reports indicate that the breach impacted up to approximately 2.7 million vehicles and their respective owners' associated personal information.

29.     The Personal Information stolen in the breach necessarily places affected individuals at heightened risk of identity theft, phishing attacks, and financial fraud. HAEA itself acknowledges these dangers but has only offered affected individuals enrollment "in a complementary two-year credit monitoring service."[8]

---

[8] *HAEA Notice of Data Breach*, https://oag.ca.gov/system/files/HAEA%20Sample%20Notice.pdf (last accessed Nov. 12, 2025).

CLASS ACTION COMPLAINT

30.    To date, HAEA has failed to take adequate steps to protect individuals affected by the Data Breach, instead putting the burden on Plaintiff and Class Members to take action to mitigate their damages. For example, in its Notice of Data Breach, HAEA tasks consumers with monitoring accounts for unauthorize activity and making time-consuming phone calls in the event of a concern[9]:

**Steps You Can Take to Protect Against Potential Misuse of Personal Information:**

You should always remain vigilant for incidents of fraud and identity theft, including by regularly reviewing your account statements and monitoring free credit reports. If you discover any suspicious or unusual activity on your accounts or suspect identity theft or fraud, be sure to report it immediately to your financial institutions.

In addition, you may contact the Federal Trade Commission ("**FTC**") or law enforcement, including your state Attorney General, to report incidents of identity theft or to learn about steps you can take to protect yourself from identity theft. To learn more, you can go to the FTC's website, at www.ftc.gov/idtheft/, or call the FTC, at (877) IDTHEFT (438-4338) or write to Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580.

You may also periodically obtain credit reports from the nationwide credit reporting agencies. If you identify information on your credit report resulting from a fraudulent transaction, you should request that the credit reporting agency delete that information from your credit report file. In addition, under federal law, you are entitled to one free copy of your credit report every 12 months from each of the three nationwide credit reporting agencies. You may obtain a free copy of your credit report by going to www.AnnualCreditReport.com or by calling (877) 322-8228. You may contact the nationwide credit reporting agencies at:

| Equifax | Experian | TransUnion |
|---|---|---|
| (800) 685-1111 | (888) 397-3742 | (800) 680-7289 |
| P.O. Box 740241 | P.O. Box 9701 | Fraud Victim Assistance Department |
| Atlanta, GA 30374-0241 | Allen, TX 75013 | P.O. Box 2000 |
| www.Equifax.com | www.Experian.com | Chester, PA 19022 |
| | | www.TransUnion.com |

You also have other rights under the Fair Credit Reporting Act ("**FCRA**"). For further information about your rights under the FCRA, please visit: https://files.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf.

## C.    **Impact of the Data Breach**

31.    As a result of the Data Breach, Plaintiff and Class Members had some of their most sensitive Personal Information accessed and acquired by cybercriminals, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, the value of their time reasonably incurred to remedy or mitigate the effects of the attack, and unauthorized use of their Personal Information.

32.    The actual extent, scope, and impact of the Data Breach remains uncertain. Unfortunately for Plaintiff and Class Members, the damage is already done because their

---

[9] *Id.*

sensitive Personal Information has been disclosed to unauthorized persons during the Data Breach.

33.    HAEA knew or should have known that its affected systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, HAEA failed to timely make changes to its data security systems, privacy policies, and its IT systems and servers, exposing its customers' Personal Information to the risk of theft, identity theft, and fraud.

34.    The Data Breach creates a heightened security concern for Plaintiff and Class Members because their SSNs, and likely their financial information and other sensitive information, was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. To obtain a new number, a breach victim must demonstrate ongoing harm from misuse of his or her SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

35.    Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, SSNs "can be an identity thief's most valuable piece of consumer information."[10] TIME quotes data security researcher Jim Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[11]

36.    HAEA had a duty to keep Plaintiff's and Class Members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class

---

[10] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

[11] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

Members provided their Personal Information to HAEA with the understanding that HAEA would comply with its privacy policies and protocols, the values it espouses regarding privacy (e.g., on its webpage entitled *IT Infrastructure and Security*, discussed *supra*), and its obligations to keep such information confidential and secure from unauthorized disclosures.

37.    Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in HAEA's industry.

**D.    Theft of Personal Information Has Serious Consequences for Victims**

38.    Data breaches are by no means new, and they should not be unexpected.

39.    Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[12] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

40.    These types of attacks should be anticipated by companies that store sensitive PII, like HAEA, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

41.    Theft of Personal Information is serious. The Federal Trade Commission (FTC) has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[13]

---

[12] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[13] *See* Federal Trade Commission, *What to Know About Identity Theft*, FED. TRADE COMM'N CONSUMER ADVICE, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Oct. 22, 2025).

42.     Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[14]

43.     According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[15]

44.     Personal Information is a valuable property right.[16] The value of sensitive

---

[14] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, FED. TRADE COMM'N CONSUMER ADVICE, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited Nov. 13, 2025).

[15] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[16] *See* Marc van Lieshout, *The Value of Personal Data*, 457 INTERNATIONAL FEDERATION FOR INFORMATION PROCESSING 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

CLASS ACTION COMPLAINT

Personal Information as a commodity is measurable.[17] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[18]

45.     Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information reportedly exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

46.     Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

47.     Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy

---

[17] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[18] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD DIGITAL ECONOMY PAPERS, NO. 220 at 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

CLASS ACTION COMPLAINT

protective websites."[19]

48.    There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[20]

49.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

50.    Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[21]

51.    It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**E.    HAEA Failed to Act in the Face of a Known Risk of a Data Breach**

52.    Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Defendant failed to take reasonable steps to adequately protect Personal Information, leaving its clients (and potentially others) exposed to risk of fraud and identity theft.

---

[19] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

[20] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[21] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

CLASS ACTION COMPLAINT

53.    HAEA is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with providing software services and products is highly sensitive. As a company that requires consumers to provide highly sensitive and identifying information, HAEA is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

54.    HAEA was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information was adequately secured.

55.    Despite the well-known risks of hackers and cybersecurity intrusions, Defendant failed to employ adequate data security measures in a meaningful way in order to prevent breaches, including the Data Breach.

56.    The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, it could have prevented the Data Breach.

57.    Despite the fact that HAEA was on notice of the very real possibility of data theft, including through prior data breaches to Hyundai Motor Europe[22] as well as to Hyundai customers in France and Italy[23], it still failed to make necessary changes, and permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and approximately 2.7 million other Class Members' Personal Information to criminals.

58.    Defendant permitted Class Members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

---

[22] Lawrence Adams, *Hyundai Motor Europe Hit By Black Basta Ransomware Attack*, BLEEPING COMPUTER (Feb. 8, 2024), https://www.bleepingcomputer.com/news/security/hyundai-motor-europe-hit-by-black-basta-ransomware-attack/

[23] Villus Petkauskas, *Hyundai Data Breach Exposed Customer Info*, CYBERNEWS (Apr. 18, 2023), https://cybernews.com/news/hyundai-data-breach-france-italy/.

59.    Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[24]

60.    As a result of the events detailed herein, Plaintiff and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including, but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

61.    Victims of the Data Breach have likely already experienced harms and are subject to a substantial and ongoing risk of harm, including identity theft and fraud.

62.    As a result of HAEA's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

63.    Plaintiff brings this action individually and on behalf of the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> All residents of the United States who were impacted by the Data Breach, including all persons who were sent notice by Defendant

---

[24] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

1    that their Personal Information was compromised as a result of the
     Data Breach.

2        64.    The above-defined class are referred to hereafter as the "Class." Excluded

3   from the Class is: (1) any Judge presiding over this action, members of their immediate

4   families, and court staff; and (2) Defendant, its subsidiaries, parent companies, successors,

5   predecessors, and any entity in which Defendant, or its parents, have a controlling interest,

6   and its current or former officers and directors.

7        65.    **Numerosity**: While the precise number of Class Members has not yet been

8   determined, members of the Class are so numerous that their individual joinder is

9   impracticable, as the proposed Class is reported to include approximately 2.7 million

10  members who are geographically dispersed.

11       66.    **Typicality**: Plaintiff's claims are typical of Class Members' claims. Plaintiff

12  and all Class Members were injured through Defendant's uniform misconduct, and

13  Plaintiff's claims are identical to the claims of the Class Members they seek to represent.

14  Accordingly, Plaintiff's claims are typical of Class Members' claims.

15       67.    **Adequacy**: Plaintiff's interests are aligned with the Class Plaintiff seeks to

16  represent, and Plaintiff has retained counsel with significant experience prosecuting

17  complex class action cases, including cases involving alleged privacy and data security

18  violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously.

19  The Class's interests are well represented by Plaintiff and undersigned counsel.

20       68.    **Superiority**: A class action is the superior—and only realistic—mechanism

21  to fairly and efficiently adjudicate Plaintiff's and other Class Member's claims. The injury

22  suffered by each individual Class Member is relatively small in comparison to the burden

23  and expense of individual prosecution of complex and expensive litigation. It would be

24  very difficult if not impossible for Class Members individually to effectively redress

25  Defendant's wrongdoing. Even if Class Members could afford such individual litigation,

26  the court system could not. Individualized litigation presents a potential for inconsistent or

27  contradictory judgments. Individualized litigation increases the delay and expense to all

28  parties, and to the court system, presented by the complex legal and factual issues of the

case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

69. **Commonality and Predominance**: The following questions common to all Class Members predominate over any potential questions affecting individual Class Members:

- whether Defendant engaged in the wrongful conduct alleged herein;
- whether Defendant's data security practices resulted in the disclosure of Plaintiff's and other Class Members' Personal Information and the Data Breach;
- whether Defendant violated privacy rights and invaded Plaintiff's and Class Members' privacy; and
- whether Plaintiff and Class Members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

70. Given that Defendant engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

71. **Injunctive and Declaratory Relief**: Consistent with Fed. R. Civ. P. 23(b)(2), Defendant, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

72. Plaintiff realleges and incorporates paragraphs 1-71 as though fully set forth herein.

73. Defendant was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class Members.

74.     Defendant knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class Members, and to not ensuring that its servers and systems, and the Personal Information, was secure. These risks were reasonably foreseeable to Defendant, including because Defendant has previously experienced a data breach.

75.     Defendant owed duties of care to Plaintiff and Class Members whose Personal Information had been entrusted to it.

76.     Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate data security. Defendant had a duty to safeguard Plaintiff's and Class Members' Personal Information and to ensure that it adequately protected Personal Information. Defendant breached this duty.

77.     HAEA's duty of care arises from its knowledge that its customers entrust it with the highly sensitive Personal Information that HAEA is required to (and represents that it will) handle securely. Indeed, on its website, HAEA is committed to "protecting & securing [its] robust IT Infrastructure," taking "various measures to safeguard against potential threats and protect sensitive data."[25]

78.     Only HAEA was positioned to ensure that its systems, servers, and services were sufficient to protect against breaches and the harms that Plaintiff and Class Members have now suffered.

79.     A "special relationship" exists between Defendant, on the one hand, and Plaintiff and Class Members, on the other hand. Defendant entered a "special relationship" with Plaintiff and Class members by agreeing to accept, store, and have access to the sensitive Personal Information provided by Plaintiff and Class Members in connection with obtaining or utilizing HAEA's services.

80.     But for Defendant's wrongful and negligent breach of its duties owed to

---

[25] *IT Infrastructure & Security*, https://www.haeaus.com/services/#it_infrastructure_security (last accessed Nov. 12, 2025).

Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

81.    Defendant acted with wanton disregard for the security of Plaintiff's and Class Members' Personal Information.

82.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known it was failing to meet these duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

83.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have been harmed and face a substantial and continuing risk of harm.

84.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II
## BREACH OF IMPLIED CONTRACT

85.    Plaintiff realleges and incorporates paragraphs 1-71 as though fully set forth herein.

86.    HAEA provided or provides services, and Plaintiff and Class Members provided their Personal Information to HAEA as customers utilizing those services, or in otherwise transacting with Defendant.

87.    In connection with their business relationship, Plaintiff and Class Members entered into implied contracts with HAEA.

88.    Pursuant to these implied contracts, Plaintiff and Class Members provided HAEA with their Personal Information. In exchange, HAEA agreed, among other things, to: (1) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' Personal Information; and (2) protect Plaintiff's and Class Members' Personal Information in compliance with federal and state laws and regulations and industry standards.

CLASS ACTION COMPLAINT

89.     The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and HAEA, on the other hand. Had Plaintiff and Class Members known that HAEA would not adequately protect its customers' Personal Information, they would not have done business with HAEA and utilized its services.

90.     Plaintiff and Class Members performed their obligations under the implied contract when they provided HAEA with their Personal Information.

91.     Necessarily implicit in the agreements between Plaintiff/Class Members and Defendant was HAEA's obligation to take reasonable steps to secure and safeguard Plaintiff's and Class Members' Personal Information.

92.     Defendant breached its obligations under its implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable security measures to protect their Personal Information.

93.     Defendant's breach of its obligations of its implied contracts with Plaintiff and Class Members directly resulted in the Data Breach.

94.     The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Defendant's material breaches of its agreements.

95.     Plaintiff and other Class Members were damaged by Defendant's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv)  the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

## COUNT III
## UNJUST ENRICHMENT

96.     Plaintiff realleges and incorporates paragraphs 1-71 as though fully set forth herein.

97.     This claim is pleaded in the alternative to the implied contract claim.

98.     HAEA has profited and benefited from the monies or fees paid and the Personal Information provided by Plaintiff and Class Members to receive services and benefits from HAEA.

99.     HAEA has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and Class Members did not receive services of the quality, nature, fitness, or value represented by HAEA and that reasonable consumers expected.

100.    HAEA has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and Class Members.

101.    Equity and justice militate against permitting HAEA to retain these profits and benefits.

102.    Plaintiff and Class Members suffered injury as a direct and proximate result of HAEA's unjust enrichment and seek an order directing HAEA to disgorge these benefits and pay restitution to Plaintiff and Class Members.

## COUNT IV
## DECLARATORY JUDGMENT

103.    Plaintiff incorporates paragraphs 1-71 as if fully set forth herein.

104.    Plaintiff and the Class have stated claims against Defendant based on negligence, breach of implied contracts and unjust enrichment.

105.    Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiff and the Class, as evidenced by the Data Breach.

106.    As a result of the Data Breach, Defendant's systems are more vulnerable to unauthorized access and require more stringent measures to be taken to safeguard the PII of Plaintiff and the Class going forward.

107.    Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with their data security obligations.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B.    Award Plaintiff and Class Members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C.    Award declaratory and injunctive relief as permitted by law or equity to assure that Class Members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D.    Award Plaintiff and Class Members pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Award Plaintiff and Class Members reasonable attorneys' fees, costs, and expenses, as allowable; and

F.    Award Plaintiff and Class Members such other favorable relief as allowable under law or at equity.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: November 13, 2024          Respectfully submitted,

_/s/ Tina Wolfson_
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com

- 21 -
CLASS ACTION COMPLAINT

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Alyssa Brown (SBN 301313)
abrown@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT